

**SIGNED this 24 day of November, 2009.**

_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: ) | |
| ) | |
| **PREBUL JEEP, INC. d/b/a/ PREBUL** ) | |
| **AUTOGROUP, PREBUL KIA, PREBUL** ) | |
| **JEEP, PREBUL CHRYSLER, and PREBUL** ) | |
| **DODGE,** ) | **No. 09-10838** |
| ) | **Chapter 7** |
| Debtor. ) | |
| ) | |
| ) | |
| **HITACHI CAPITAL AMERICA CORP.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Adv. No. 09-1084** |
| ) | |
| **JERROLD D. FARINASH, Chapter 7 Trustee** ) | |
| **for Prebul Jeep, Inc.; FSG BANK, N.A.;** ) | |
| **CHRYSLER FINANCIAL SERVICES** ) | |
| **AMERICAS LLC; GE COMMERCIAL** ) | |
| **DISTRIBUTION FINANCE CORP.;** ) | |
| **CITIZENS SAVINGS & LOAN CORPO-** ) | |
| **RATION; and REGIONS BANK,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

This adversary proceeding is before the court on the plaintiff's motion for summary judgment on the first count of its complaint. Having reviewed the motions and other relevant filings, the Court concludes that the motion must be denied.

**I.**

The record reveals the following undisputed facts. In late October 2008, plaintiff Hitachi Capital America Corp. and debtor Prebul Jeep, Inc., entered into a floor-plan and security agreement. Under the agreement, Hitachi extended financing to the debtor for the purchase of inventory, consisting primarily of new Chrysler and Dodge trucks, and the debtor agreed to remit to Hitachi any proceeds from the sale of such inventory.

On February 9, 2009, the debtor purportedly deposited some of these sale proceeds into one of its accounts with defendant FSG Bank. The debtor also issued two checks to Hitachi totaling $109,726, allegedly representing the amount of the proceeds. Both checks were drawn on the debtor's operating account at FSG Bank, and Hitachi deposited the checks in its own account on the same day.

On February 11, 2009, the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  On February 17, 2009, FSG Bank returned Hitachi's checks after refusing to honor them. On June 5, 2009, Hitachi initiated this adversary proceeding, seeking to recover certain funds held in the debtor's FSG operating account. In Count I of the complaint, Hitachi seeks the recovery of $109,726, representing the amount of the two dishonored checks, and the pending motion seeks summary judgment on that count. The motion is opposed by FSG Bank and several other defendants.

## II.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Hitachi relies on its status as a holder in due course of the two checks drawn on the debtor's FSG account in contending that it is entitled to summary judgment for $109,726 of the funds held in that account. The Uniform Commercial Code, as enacted in Tennessee (the "UCC"), defines a "holder in due course" –

> the holder of an instrument if:
>
> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in § 47-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in § 47-3-305(a).

Tenn. Code Ann. § 47-3-302(a). The chief advantages of holder-in-due-course status come from the protections afforded by UCC Sections 3-305(b) and 3-306, which generally allow a holder in due course to take an instrument free from other claims and from certain defenses that other parties to the instrument hold "against a person other than the holder." Tenn. Code Ann. § 47-3-305(b), -306.

Assuming for the sake of argument that Hitachi was indeed a holder in due course of the two checks at issue, such status does not entitle Hitachi to prevail on its claim that it is entitled to $109,726 from the debtor's FSG operating account. Hitachi asserts that, as a holder-in-due-course of the checks drawn on the debtor's FSG account, it owns the FSG funds contained in that account. Section 3-408 of the UCC specifically states, however, that "[a] check or other draft does not operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until the drawee accepts it." Tenn. Code Ann. § 47-3-408. This provision applies to holders in due course as well as payees. *See Trump Plaza Assocs. v. Haas*, 692 A.2d 86, 91 (N.J. Super. Ct. App. Div. 1997) (applying Section 3-408 and stating that the "rights and protections" afforded by holder in due course status "do not come into play unless and until the drawee bank accepts the instrument"). Because the facts do not establish that FSG Bank ever accepted the two checks, this provision shields the bank from liability on the instrument and precludes Hitachi from using rejected checks to lay claim to $109,726 in the debtor's FSG account. Rather, Hitachi's only recourse on the instrument is against the debtor as drawer of the check. *First Am. Nat'l Bank v. Commerce Union Bank*, 692 S.W.2d 642, 646 (Tenn. Ct. App. 1985); Tenn. Ann. Code § 47-3-414(b).

Hitachi also asserts that it should recover the $109,726 from the debtor's FSG account because, as a holder in due course, it has priority over all other interests in the funds by reason of the interaction of UCC Sections 3-306 and 9-331. The court disagrees. The former section provides that:

> A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

4

Tenn. Code Ann. § 47-3-306. Section 9-331 states that Article 9 "does not limit the rights of a holder

in due course of a negotiable instrument," and confirms that holders in due course have "priority over

an earlier security interest, even if perfected, to the extent provided in Articles 3, 7, and 8." *Id.* § 47-

9-331.

These provisions stand for the unremarkable proposition that a holder in due course will take

an instrument free of any security interests *in the same instrument*. Essentially, this is what Section

3-306 already provides on its own: a holder-in-due-course takes an instrument free of other claims

to it. The limited role of Section 9-331 is simply to clarify that Article 9 security interests do not alter

that result.  *See generally* 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 33-

10 (5th ed.).

An illustration of the proper application of these provisions is provided by *Allstate Financial

Corp. v. Financorp, Inc.*, 934 F.2d 55 (4th Cir. 1991). In that case, a company granted the plaintiff-

creditor a security interest in its accounts receivable and later gave the defendant-creditor an assign-

ment of a particular account. *Id.* at 57. Pursuant to the latter agreement, the company negotiated two

checks to the defendant-creditor, who held them as a holder in due course. *Id.* at 57-59. In response,

the plaintiff-creditor asserted its own interest in the checks: they were the direct proceeds of its senior

security interest in the accounts receivable. *Id.* at 59-60. Looking to UCC Section 9-309 (the prede-

cessor of Section 9-331), the court found that the plain terms of the provision entitled the defendant-

creditor, as a holder in due course, to ownership free of the senior security interest. *Id.* at 59-61.

The situation in this proceeding is different. Hitachi takes the position that, as a holder in due

course of the checks, it took the checks free from all claims by the defendants. However, unlike

*Allstate Financial* or other UCC 9-331 cases, the defendants in this proceeding do *not* claim an

interest in *the checks themselves*. Simply put, neither Section 3-306 nor Section 9-331 is relevant

because Hitachi already possesses all that these provisions can grant it: ownership of the instruments

free of other interests. What Hitachi seeks is an even stronger power: a roving super-priority that

trumps security interests in *other property* (i.e., the funds in the debtor's FSG account) when those

interests stand in the way of collecting on an instrument. Neither Section 3-306 nor Section 9-331

is so potent.

### III.

In sum, Hitachi's alleged status as a holder in due course is irrelevant, because it neither

confers ownership over the debtor's funds in the FSG account nor trumps security interests held in

those funds.  Hitachi owns the checks but, because UCC Section 3-408 makes clear that the checks

did not "operate as an assignment of funds in the hands of the drawee available for its payment,"

Hitachi does not own the funds themselves, whether or not it qualifies a holder in due course.

Although Hitachi may ultimately have a right to the funds based on a security interest that is superior

to other security interests in the funds, any such interest does not derive from a pair of checks drawn

against those funds. Since the checks were not certified or otherwise accepted by FSG, Hitachi's sole

recourse insofar as the checks are concerned is against the debtor. Tenn. Code Ann. §§ 47-3-408,

-414(b). Accordingly, Hitachi's motion for partial summary judgment will be denied.

###